Filed 11/26/14  In re P.J. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| In re P.J. et al., Persons Coming Under the Juvenile Court Law. | C076546 |
| SHASTA COUNTY HEALTH AND HUMAN SERVICES AGENCY,  Plaintiff and Respondent,  v.  Crystal J.,  Defendant and Appellant. | (Super. Ct. Nos. 13JVSQ2283202, 13JVSQ2992601, 13JVSQ2992701, 13JVSQ2992801) |

Crystal J., mother of the minors, appeals from the judgment of disposition.  (Welf. & Inst. Code, §§ 355, 358, 360, 395 [further undesignated statutory references are to the

Welfare and Institutions Code].)  Mother contends substantial evidence does not support either the jurisdictional findings or the order removing the minors from her custody. We will affirm the judgment of disposition.

BACKGROUND

Shasta County Health and Human Services Agency (Agency) filed a petition in June 2000 to detain 18-month-old P.J.  Mother was homeless and the petition alleged mother abandoned the minor and was using methamphetamine and marijuana.  Mother acknowledged that her boyfriend was abusive but she continued to return to the relationship.  The juvenile court sustained the petition and ordered services.  Mother eventually reunified with the minor.  The juvenile court terminated the dependency in July 2001.

In December 2013, the Agency filed a petition alleging the minor P.J. and her siblings, A.J., age 3, and the twins Z.C. and J.C., both age 7, were at risk of physical harm due to mother's long-standing history of domestic violence and methamphetamine use.  The petition alleged mother's current boyfriend, D.H., had a conviction for domestic violence and, according to the minors, she and D.H. had daily heated verbal arguments. The petition also alleged the twins' father was convicted in 2009 of domestic violence due to an incident with mother which resulted in injury to one of the twins.  The minors did not feel safe in the home.

After reports of domestic violence in the home, the social worker spoke to the twins.  The twins said they did not like D.H. because he was always yelling and screaming, even at the baby.  J.C. said mother had thrown things at D.H. during their fights and the fighting made her sad.  The twins wanted the fighting to stop and D.H. to leave the home.  P.J. confirmed there were daily fights and often items were thrown. She had tried to intervene but mother and D.H. got mad and yelled at her.  P.J. cut herself "to help release her anger."  P.J. said mother had been in violent relationships as long as

2

she could remember. P.J. just wanted D.H. out of their lives and she often kept the other minors in her room during fights to keep them safe.

The social worker spoke to mother, who agreed to a safety plan. According to the plan, mother would not allow D.H. back into the home. Mother defended D.H. and blamed herself for the violence. Mother also admitted to a history of methamphetamine use. The social worker spoke to D.H., who denied any current domestic violence and said P.J. was making it up and getting the other minors to play along.

A short time after agreeing to the safety plan, mother informed the social worker she was no longer willing to follow it because the minors were not in danger from D.H. The social worker interviewed the twins, who were not happy about D.H.'s return. They said D.H. had been at the home but they were made to leave if he was there. The social worker spoke to P.J., who said mother called them liars and told them not to speak to the social worker. Mother had P.J. supervise the younger minors for hours while mother was with D.H. The juvenile court ordered the minors detained.

The disposition report in January 2014 recommended reunification services for mother. Mother had tested negative in December 2013.

An addendum filed in March 2014 stated mother had made good progress. Mother had a private therapist but had failed to go to the Knowledgeable Non Offending Women's group (KNOW). Mother was participating in drug treatment and testing negative. Her unsupervised visits with the minors were going well. A second addendum in April 2014 continued to report on mother's progress and attendance at programs. A third addendum in May 2014 stated that KNOW closed mother's case due to absences but mother continued to participate in drug treatment and other aspects of her plan. Mother began to have overnight visits with the three youngest minors.

The combined jurisdiction/disposition hearing began in May 2014. Mother testified she had been involved in domestic violence with the twins' father but learned from the experience, entered therapy and had no other such relationship. She denied

3

there was any domestic violence in the relationship with D.H. although they had disagreements. Mother said she had seen the minors fearful when she and D.H. disagreed, but they never said they felt unsafe; mother believed they just did not like him acting as a stepparent. She disagreed with the minors' statements that she and D.H. argued all the time and stated that P.J. lied. She was not concerned about D.H.'s history of domestic violence because she did not view him as a person who was physically violent and he had not been physically violent with her. Mother added that she last used methamphetamine in September 2011, went to treatment and completed treatment in September 2012. She stated she quit the KNOW program because she felt the instructor was not professional. In response to the juvenile court's question, mother admitted she had made a false report regarding D.H. running her off the road.

A longtime friend of mother testified that P.J. was defiant, sarcastic and a liar.

D.H. testified that, when he first started spending time with mother, there was little consistency or discipline in the home. He helped her develop a behavioral plan using positive reinforcement. P.J. was resistant to the increased consistency and became increasingly rebellious. D.H. testified they did not argue and any disagreements were taken outside. He said the relationship with mother was no longer a romantic one so she could concentrate on having the minors returned to her care. He explained his past conviction for domestic violence resulted from "payback" by a former girlfriend and he had done nothing wrong.

The juvenile court sustained the petition as amended and adopted the recommended disposition findings and orders.

STANDARD OF REVIEW

When the sufficiency of the evidence to support a finding or order is challenged on appeal, even where the standard of proof in the trial court is clear and convincing, the reviewing court must determine if there is any substantial evidence -- that is, evidence which is reasonable, credible and of solid value -- to support the conclusion of the trier

4

of fact. (*In re Angelia P*. (1981) 28 Cal.3d 908, 924; *In re Jason L.* (1990) 222 Cal.App.3d 1206, 1214.) In making this determination we recognize that all conflicts are to be resolved in favor of the prevailing party and that issues of fact and credibility are questions for the trier of fact. (*In re Jason L.*, *supra*, 222 Cal.App.3d at p. 1214; *In re Steve W.* (1990) 217 Cal.App.3d 10, 16.) The reviewing court may not reweigh the evidence when assessing the sufficiency of the evidence. (*In re Stephanie M*. (1994) 7 Cal.4th 295, 318-319.) Moreover, when the arguments by mother " 'only tend to establish a factual context which, had it been credited by the trial court, might have led to a different decision,' " such arguments are facially meritless in light of the standard of review in this court. (*In re Charmice G*. (1998) 66 Cal.App.4th 659, 664.)

DISCUSSION

I

Mother argues there is insufficient evidence to support the jurisdictional findings of long-standing domestic violence or a long history of methamphetamine abuse. Mother's argument relies on her version of events, her denial of domestic violence with D.H., and attacks on P.J.'s character and veracity. In making its findings, however, the juvenile court apparently did not accept mother's testimony or the evidence presented on her behalf.

The record shows that when P.J. was first removed from mother's custody in 2000, mother was using methamphetamine and she admitted that her boyfriend at the time was abusive. In 2009, the twins' father was convicted of domestic violence in the relationship with mother. In 2011 mother relapsed into methamphetamine use. Mother's current relationship with D.H. was described by P.J. and the twins as one where fighting, yelling and screaming occurred frequently and objects were thrown. The minors were afraid of the confrontations and either left the home or hid together for safety. P.J. told the social worker that mother had been in abusive relationships as long as P.J. could remember. Mother admitted prior methamphetamine use and said the only reason she

5

was able to remain clean from methamphetamine was the relationship with D.H. Mother was unable to maintain the safety plan because D.H. was more important to her than the minors' safety and well-being. Ample evidence supports the jurisdictional findings.

## II

Mother also claims substantial evidence does not support the order removing the minors from her custody.

To support an order removing a child from parental custody, the juvenile court must find clear and convincing evidence that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." (§ 361, subd. (c)(1).)

Mother had participated in services but her testimony made it clear that she continued to minimize her abusive relationship with D.H. and to blame the minors, particularly P.J. D.H.'s testimony about the current relationship and his past conviction also demonstrated his failure to accept responsibility for his actions or to understand how his actions affected the minors. Although mother's relationship with D.H. was asserted to be no longer romantic, mother continued to maintain contact with D.H. and, by her own admission, was dependent on his support to remain clean from methamphetamine. The minors' fear of D.H., and their expressed desire that he no longer be in the home, required the Agency to monitor the family interactions with D.H. The Agency also needed to see that mother understood the signs of a potentially violent relationship and that she would protect the minors. Although the Agency had allowed overnight visits, it was still necessary to scrutinize mother's ability to understand the domestic violence issues and to maintain a safe and stable environment before returning the minors to her

6

care.  The order removing the minors was supported by substantial evidence.

DISPOSITION

The judgment of disposition is affirmed.


                                                                             MAURO_____, J.

We concur:

_____HULL_____, Acting P. J.

_____DUARTE_____, J.